## HART *vs.* RAFTER.

Under the facts of this case, including the various strong *indicia* of fraud which were left without contradiction or explanation, a verdict was demanded in favor of the plaintiff against the claim interposed to the fund which had been garnished by the plaintiff. The verdict found should have been set aside, because it was directly against the law and evidence and without evidence to support it.

March 31, 1887.

Verdict. Claim. Fraud. Principal and Agent. Before Judge MARSHALL J. CLARKE. Fulton Superior Court. September Term, 1886.

Reported in the decision.

FRANK A. ARNOLD, for plaintiff in error.

R. J. JORDAN, by brief, for defendant.

HALL, Justice.

Hart brought suit upon a bill for lumber and other building material, sold and delivered by him to Flood, the defendant in this case, who was a carpenter, builder and contractor. While this suit was pending, a summons of garnishment was sued out, at the instance of the plaintiff, and served upon Willard H. Nutting. Before Mr. Nutting answered the garnishment, it was dissolved by Rafter, who gave bond in compliance with the statute, and claimed the amount due to Flood as his (Rafter's) property. Flood had entered into a contract with Nutting to build a house for him in the city of Atlanta. The contract was signed by both of the parties to it, and Flood entered upon the performance of the contract, and partly performed it, receiving on account of his work, according to his own testimony, the sum of $144. About that time he seems to have discovered that in this whole transaction he was act-

ing as the agent of another. He went to Mr. Norrman, who was Nutting's architect, and asked that he be allowed to add the word "agent" to his signature to that contract, informing Mr. Norrman at the same time that he was the agent of his (Flood's) wife. He went and added the word "agent" simply to the contract, which was in the hands of Mr. Nutting, but did not disclose to him who was his principal. After that, he executed a mortgage upon his property to Rafter; but no money passed, and no consideration appears to have been given for the mortgage. He retained possession of the paper, and it does not appear that he ever delivered it. Nothing was heard as to his being Rafter's agent until this garnishment was served and Mr. Nutting was preparing to answer. Just here it may be well to remark that there was no evidence disclosing the character of his agency for Rafter, or what he was to do as his agent. There is not the slightest evidence that he ever owed Rafter anything, that he ever purchased property from him, or as to the particulars of the relation of principal and agent claimed to exist between them. It abundantly appears that Rafter was entirely impecunious; and further, that he attempted to leave Atlanta after collecting the money from his employers, without paying the hands he had engaged to assist him in carrying out contracts with his patrons for building. Simultaneously with his departure, Flood also left, and went in an opposite direction. Rafter was arrested in his flight to New York and brought back here under a charge of cheating and swindling those he had employed, and got rid of that charge and went his way.

It would be no great strain to infer from these facts that this alleged agency was wholly fictitious, and resorted to as a device to cover and protect Flood's property from his creditors. Even after the garnishment was dissolved, Flood received his money from Nutting as the alleged agent for Rafter, and there is nothing in this record to show that he accounted to Rafter or turned over any por-

tion of the money to him.   Flood was sworn as a witness on the trial of the case, but Rafter was not, although he was vitally interested in the issues undergoing investigation—that is, if the claim undergoing investigation was *bona fide* and real.

These various strong *indicia* of fraud are not met and rebutted, and without contradiction or explanation, they make a case so invincible as to demand imperatively a verdict in favor of the plaintiff.   This dispenses with the necessity of considering the questions of law which were made and insisted on in argument here.   This leads to the conclusion that this verdict should have been set aside, because it was directly in the face of the law and evidence. Indeed, there is no evidence that we can find upon which to rest it.

Judgment reversed.